Good afternoon, your honors. I am John Johnson, and I'm representing Mrs. Lambert, plaintiff appellant. Mrs. Lambert was found to be disabled back in 2008 due to having rheumatoid arthritis, which limited her to sedentary work. In August 2017, the ALJ found that she continued to have rheumatoid arthritis, right Achilles tendonopathy and calcaneus spurs, but there had been medical improvement, and now she was able to perform light work, light exertion work. This court has asked me to focus on credibility, so that's where I'll start. ALJ found that Mrs. Lambert's pain and limitations were not entirely consistent with the objective medical evidence, specifically that her medical treatment was not consistent with a totally disabled person. Her medications were effective in controlling her symptoms, and she had reported daily activities of washing dishes, putting clothes in the dryer, and cooking. Mrs. Lambert contends that taking medications of Ambryl, Methotrexate, and Plaquenil were not effective in controlling her rheumatoid arthritis, because x-rays show a deterioration in her upper and lower extremities, with bulges in her finger and the scaphoid bone, which is the second bone below the thumb, and toes, and ultimately required surgery on her right heel to reattach the Achilles tendon, and subsequent need to elevate her right leg, as well as using a cam walker. Mrs. Lambert contends, in regards to daily activities, that the ALJ erred by disregarding her statements in November 2016 that she occasionally still needed help from her sister to bathe and dress herself, and she needed to use a motor car while shopping, all of which is consistent with problems with erosions in her hands and toes and fingers, difficulty making a fist, and the need to use a cam walker, which was noted by the ALJ. Mrs. Lambert contends that in light of her lack of representation, the ALJ erred by failing to make any inquiry or findings regarding how often and how long she spent time performing household chores, because this court has held in several cases that daily activities must occupy a substantial part of the day, a fair vertigin garrison. Mrs. Lambert also contends that the ALJ erred by failing to make any finding regarding her chronic fatigue, because the records show that in January of 2015, she was diagnosed with symptoms of general fatigue, and treatment records show that she is consistent with her reported need to take a nap for an hour every afternoon, and the Merck Manual, footnote number two, which states that when it comes to reactive arthritis, it includes the fatigue, one of the symptoms is chronic fatigue. This court noted in the Prickler decision that Congress places a great premium upon agency expertise, and for the sake of unity, the courts should give great deference to lower courts, and not substitute their discretion for the agency, and therefore, reviewing courts should leave it to the ALJ to make credibility findings, and resolve conflicts and ambiguity. However, the Treasury Court also went on to state that since the courts are bound to consider only the grounds on which the ALJ based her findings, the ALJ must explain his or her reasoning for purpose of review, specifically identifying the testimony from the claimant he or she finds not to be credible, and explain what evidence undermines that testimony, because general findings are insufficient. Mrs. Lambert contends that in the absence of affirmative evidence of malingering, the ALJ should be found to have failed to set forth clear and convincing reasons specifying which symptoms of chronic pain, fatigue, difficulty making fits, using a cam, that he found, Cam Walker, that he found not to be credible, because again, the ALJ started out and only really found that her symptoms were simply not generally consistent with the objective medical evidence. This court has also then asked me to go on to the presumption of continuing disability. Opposing counsel asserts that the presumption of continuing disability is no Mrs. Lambert contends that that case is inopposite, because that case neither mentioned nor made any holding regarding the issue of presumption of continuing disability. Counsel, are you, excuse me, did you receive a copy of the Commissioner's 28J letter that discusses the statute that was enacted in 1984, which appears to do away with the presumption? No, I did not see that, Your Honor. Well, that's not good. It should have been served on you, or it should have been in the CMECF system. But in all events, there was a new law, the Social Security Disability Benefits Reform Act of 1984, which appears to require that each claim be looked at neutrally without regard to a presumption of continuing disability. And the difficulty with that is that that, at least as I see it, that statute predates our Bellamy decision. So if that is what the statute means, then Bellamy was wrong, but this panel has no authority to deal with it, because we can't overrule something that was wrong but not superseded. So my question to you is, what should we do about that? Well, I'll just say that this court has a long line of cases that affirm that there's a presumption of continuing disability, and it was affirmed by the United States Supreme Court in the Lopez class action. And the purposes of this was to avoid arbitrary decisions. What is the Lopez class action? Is that cited in your briefing? Yes, it is, Your Honor, in the reply brief. And what is the date of that decision? It was in the 1980s, Your Honor. I don't really have a date on that in front of me. I think it's 1983, which is part of the issue. I'm not sure it would have been discussing these new, they're not so new anymore, but the 1984 statute. That's my concern, because if the 1984 statute changes the game, then what the Supreme Court said in 1983 is irrelevant if the new statute is different. And if we said something contrary to the statute in 1985, we may have been wrong, but this panel can't fix it. And I guess my other question to you is whether, in your view, the presumption could make a difference in this case, factually. Yes, Your Honor, it would make a difference, because in this particular case, again, the purpose was to prevent arbitrary decisions. And in this particular case here, the judge noted that three government physicians examining, one examining physician, two consultants here, that their opinions that Mrs. Lambert was able to perform light work was not supported by the entire record of evidence. He rejected those opinions, and there is no other opinion in the record by a physician indicating that she had the capacity to perform light work. And so the judge, just basically on his own, went ahead and said she could do light work. This is an arbitrary decision. And the claimant still has the burden to prove disability, but I noted here, Federal Rules of Civil Procedure says what a presumption does. It has nothing to do with the regulations. Basically, it's a procedural issue, requiring that if there's a presumption, that the government is required to come forward. And this is what the judge did, to show some evidence to support the finding in this particular case that she had the capacity to do light work. And we're contending that there is no such evidence in the record that the ALJ could rely upon. The fact is that ALJ never indicated what evidence he relied upon, what physician's opinion he relied upon to make the decision that she could do light work. It's a really very arbitrary decision by the Administrative Law Judge. And so we're arguing that even though there is apparently no presumption of continuing disability here, the Administrative Law Judge still erred by failing to fully and fairly develop the record. Because, well, to go further here, opposing counsel has argued that the judge had no duty to further develop the record because there's no ambiguity. But this court has held that if the ALJ's own actions and decisions show that there's inadequate evidence to make a decision, this requires the judge to further develop the record. And he did not do that. And that's what we're basically asking here, is that this case be remanded back so that the record can be fully and fairly developed. Again, this lady had no representation. It looks like an arbitrary decision. The judge did not base his findings that she could do light work on any medical opinion. And we think this case should be remanded in order to fully develop the record by, as the judge should have done here, bringing in a medical consultant. This is all the more important because the Administrative Law Judge ignored material evidence. Not only does she have, really, further worsening of her impairments of her rheumatoid arthritis with bone erosions and all that, but the judge ignored the fact that there is laboratory evidence here that she had encephalitis. I looked up what that is, and in the Merck Manual, it says when it comes to active rheumatoid arthritis, that one of those symptoms is chronic fatigue. The judge never made a finding on that. Counsel, you're down to a little over three minutes. Did you wish to save some time for rebuttal? Yes, I would like to reserve some time here. Thank you. We'll hear from Ms. Bond. Good morning, Your Honor. Shea Bond on behalf of the Commissioner of Social Security. I think I would like to address the presumption of continuing disability issue first. So, as Your Honors have pointed out, and as we submitted in our 28J letter, the statute changed in 1984 to specifically, part of it was to specifically eliminate this idea that there's a presumption of continuing disability when the agency adjudicates a medical improvement. Potential medical improvement of a claimant who's already been adjudicated disabled. And I think Your Honors are concerned about what happens when you have a case that's after that amendment, and what, I guess, what does the court do at this point? So, I would point out that after Bellamy issued in 1985, the Commissioner did revise its regulations in December of 1985 to reflect these statutory changes. So what? We have Bellamy, and we're bound by Bellamy unless there's something by way of either a statute, a Supreme Court decision, or an en banc decision of this court. Well, I think, and again, I know this wasn't briefed in the cases, but I would refer the Internet Services case that is a Supreme Court case, which talks about when an agency amends its regulations, that courts would defer to that regulatory change. And so that could be. I mean, I guess that's generally a true statement. The problem we're trying to, I think where we need your assistance is our prior cases from this circuit, which do set out presumption and which haven't been overruled. Correct. But of course, they are contrary to the statute. And again, after Bellamy came out, the agency did amend its regulations to comport with the statutory changes, which is why I believe that the Supreme Court case like Brand X would permit this court to say that the existing case law is invalid on that basis. So simply because of the timing here, we do have an odd situation with the timing, but I know that Brand X wasn't briefed, but I can give the citation. It's 125. No, don't give it to us, or excuse me, don't give it to us orally. You can send it to us and to opposing counsel. Okay. The citation to Brand X and to the regulations, which I guess you cited in your letter. Yeah, we cited to the final rules, you know, introducing the legislation. Yeah. And then I believe we cited to the actual regulations themselves in our brief, but I can provide that citation to the court afterward, after the argument. And to opposing counsel. Yes, I will file that. But that could be the avenue that if this court is looking for instruction, that could be the avenue that explains how the court can proceed given the existing circuit precedent. But I think the other question you're going to ask counsel is, well, does this really have any impact if there is a presumption? And our position is that the conclusions drawn about medical improvement have to be supported by substantial evidence. So the court is still using the substantial evidence standard here. And of course, it's our position that it does. The ALJ conclusions are supported under that really highly deferential standard of review. I had some difficulty with that in this particular case for some of the reasons that Mr. Johnson was discussing in his comments. There was sort of a generalized view that, well, gee, she can do a few things around the house, and therefore she can work. But it was so general and so vague, I really had difficulty with the ALJ's decision. And I'm obviously just speaking for myself in that concern. So in terms of the daily activities, I don't think we as the government need that element to support what the ALJ did here. So even if we were to say that the ALJ's discussion of the claimant's daily activities wasn't as thorough or explanatory as it should have been, the ALJ's reliance on the other evidence in the record was sufficient. And so we have an ALJ... Excuse me. There's also the other question that was sent to you ahead of time, which is, once again, the discussion of discrediting the extent of pain testimony was also very generic. It's sort of, well, I've looked at the medical evidence and I've heard the claimant, and it doesn't match up in my view. And that's basically what we have here, rather than saying, she claimed she couldn't climb a ladder and yet the range of motion is X. That's the sort of thing we're used to seeing in this context. And it just seemed very cursory to me. I would disagree, Your Honor. I believe we have an ALJ's decision that has outlined what the claimant's subjective statements were regarding her symptoms and limitations, saying that she's constant pain, that she can't lift very much. She has the uncontrollable emotions due to Achilles tendon issues and her arthritis and the pain, but she has difficulty walking even a block and cannot use her hands to even hold a telephone. The ALJ then states, and this is on ER 51A, states that this evidence doesn't fully support those allegations. And then the ALJ goes forth and explains, again, revisiting what the claimant's complaints were when she went in to see her treatment providers, talking about the pain or I'm feeling emotionally unstable, and then outlines the relatively benign clinical findings, whether it's a mental status finding or a physical examination finding, talks about the treatment that she was being prescribed, notices that the point where she went, say, for the mental impairment, she goes from a label aspect to normal aspect. Or in terms of the standing and walking, which really was the, I think, determining factor here between why she was found disabled previously and then is not disabled now, is that she increased her capacity to stand and walk. And there's indication that with the medications, the steroid injections, recommendations that she do a home exercise program, that she admitted that she could do more walking for prolonged periods of time and that she was doing pretty good. Now, we do have the Achilles tendon condition, which developed later on. And even then when that first appeared, the ALJ explains in the decision that this happened, the Achilles tendon complaint started in August of 2016. But even then, her stance and gait examinations were within normal limits. She did have some pain and swelling over the Achilles tendon, but her sensation, motor strength, reflexes were normal. No neurological deficits were noted. This is on ER 52A of the record. I guess, Ms. Bond, I guess the problem I'm having is that if the ALJ had laid it out in the way that you have, we could then review that reasoning. I'm just having difficulty seeing how it meets the standard that we've put forth in our cases about providing specific, clear, and convincing reasons for rejecting the claimant's testimony and to specifically identify the testimony that the ALJ finds not to be credible and explain what evidence undermines that testimony. It may well be that an opinion could be written that does that, but I'm having a hard time seeing how this ALJ opinion meets that standard. So the evidence that I've just described in the summary of the testimony, I am taking from the ALJ's decision. I'm not putting words into the ALJ's mouth, but I'm reading from the ALJ's decision where the ALJ discusses this evidence. So, you know, it's our position that the discussion of what the ALJ gave, and again, I'm reading from the ALJ's decision, is the support for the ALJ's conclusions that I've, you know, I, the ALJ, have, you know, summarized and reviewed the claimant's subjective statements. I'm now explaining why this evidence is not supportive of that, and here are all these, you know, normal mental status examination findings and physical clinical findings. The admissions from the claimant that she had improved with treatment both mentally and then, again, the effects of treatment. And so then when you go on to page ER 54A of the record at the top, the ALJ is, again, further explaining that these allegations of disability are, you know, not supported here because of, you know, the types of medical treatment that she received, the improvements that she experienced following the administration of, again, steroid injections, and again, the ALJ is identifying steroid injections. I'm not pulling this from the record independently from the ALJ's decision. And, you know, there were, there wasn't as much treatment as you would expect for someone who's claiming, and again, the ALJ identifies that she's saying that she, you know, cannot use her hands even to hold the phone, that she cannot, you know, walk very long, and these sorts of allegations. And so the ALJ actually is explaining that here. And, you know, the specifics that my colleague has described about fatigue or, you know, the need for a CAM boot or whatnot, the ALJ acknowledges the evidence of this in the record, but there's just simply nothing to support that there are additional limitations. And I would say for, for example, for the fatigue, you know, the ALJ notes it again on ER51A and also on ER52A that she carried these diagnoses, but there's, there are no allegations from the claimant that she was so significantly fatigued that it would have altered the RFC finding here. And even the pages that the claimant cites in his opening and reply brief, I saw it confirmed that she carried a generalized, or excuse me, a diagnosis of generalized fatigue, but I didn't see any corresponding complaints that would show that she was limited by this. And so in that respect, there's really nothing for the ALJ to, you know, accept or reject other than acknowledging that she had a diagnosis of fatigue. There's no evidence to suggest that she had additional limitations. And in terms of the, the CAM boot or the needing to elevate her leg, I think it's pretty clear from this record that it was a temporary limitation. It was imposed when she was about to go into surgery and then recovering post-operatively. You know, even if she had to do that for a couple of months, that doesn't equate to a disabling impairment. And because an impairment has to be a disabling, it has to have caused disabling symptoms or limitations for a consecutive 12-month period. And yet we don't have that. The ALJ has acknowledged that, you know, she might have been temporarily prescribed this, but it wasn't an ongoing, the plaintiff certainly hasn't proven that it was an ongoing permanent restriction. And then in terms of, let's see what I have here. Again, I think we would say that this decision, this ALJ's decision doesn't reach or doesn't have the problems that were, say, in the cases like Brown-Hunter or Burrell, where there really was just a conclusory statement from the ALJ that I find the claimant statements not credible or I don't believe them, which was the problems identified in those cases. We do have more analysis from this ALJ and it's grounded in the record. And we would argue it's sufficiently specific and clear, the rationale and the reasons provided have support in the record. The ALJ cited in the decision has the citations to the record and under the substantial evidence standard, this would be sufficient for this court to affirm the decision. Thank you, counsel. Does either of my colleagues have additional questions for Ms. Bond? I do not. Thank you, Judge Graber. Judge Dawson? I do not. Thank you very much. Okay. And Mr. Johnson, you have a bit of rebuttal time remaining if you'd like to use that. Yes, Your Honor. Thank you very much. I would. Mrs. Lambert contends that the substantial evidence does not support the ALJ's decision that the medical records shows benign findings. And further, the ALJ did not consider all of her limitations. Shea Bond mentions that she needed to elevate her leg, but the ALJ never mentioned that in the hearing decision. That was recommended before and after the surgery to reattach the leg. That evidence about the need to elevate the leg was in the record and ALJ never asked her a single question about whether she needed to continue to elevate the leg. And we contend that based upon the new evidence that was submitted to the appeals council, new x-ray results of her right heel and the tendon, it looks like that there's still certainly some serious damage to it and there's a possibility that she may still suffer from a partial rupture of that tendon. And so we contend the record has lots of objective laboratory tests that show she has some very serious problems and the judge failed to make a whole and fair inquiry as to her limitations, whether it's fatigue or pain in her hands. He mentioned that she had difficulty making a fist here and to use a cam walker, but she never asked her about the need to elevate her legs, which two cases I mentioned here, Stuart Lingenfelter says that is a very important issue. That would prevent a person orally from being able to perform light work and probably most of sedentary work. Again, we contend that Substantialist does not support the ALJ's finding that she had the capacity to perform light work. She is certainly, it would appear that she is able to perform a full range of sedentary work. I mentioned also that there could be a question about whether you can submit new evidence to the Appeals Council for the first time. And I'd just like to point out that I mentioned the Zubek case, I believe it's from the Second Circuit, that says that a person has no representation. This was a good cause why the evidence was not submitted to the judge. And we also contend that new evidence is material to an issue presented to the ALJ about the severity of her right ankle and Achilles tendon and whether it required more surgery. And it possibly could result in a change in the outcome of the case. A person needs to elevate their leg frequently during the daytime. The Stuart case says basically this would preclude all work. That's all I have to say and I would certainly like to respond to Mrs. Bond's new evidence about the change as well. It's not evidence, counsel. She's just sending a full citation to a case that was discussed. There's not going to be a response to that. It's just so that everyone has the same citation. Oh, all right. With that, the case just argued is submitted. We very much appreciate the arguments of both counsel. They've been very helpful to us. Thank you. Thank you, Your Honor. Thank you.
judges: Graber, Dawson, Bress